No. 10,893.

## JONES v. SWIFT ET AL., EXECUTORS.

REPLEVIN BAIL.—*Fraud.*—*Principal and Surety.*—Judgment was obtained against a principal and three sureties, and execution thereon stayed by replevin bail. Afterwards one of the original sureties was released by the judgment plaintiff in consideration that J. would become additional replevin bail, which he did upon the false assurance of the principal debtor that the other original sureties consented thereto, which in truth they did not, and they afterwards procured a decree releasing them from the judgment.

*Held,* that J. was bound as replevin bail, the creditor having no knowledge of the fraud.

From the Fayette Circuit Court.

*G. C. Florea* and *C. Roehl,* for appellant.

*R. Conner, B. F. Claypool* and *J. H. Claypool,* for appellees.

COLERICK, C.—No question involving the sufficiency of any of the pleadings in this action has been presented to us, and no recital of their averments is necessary to be made in determining the questions that have been submitted for our consideration. The issues formed by the pleadings were tried by the court, who, at the request of the parties, made a special finding of the facts in the case, and its conclusion of law thereon, as follows:

"1st. That on the 20th day of June, 1877, said John

Swift recovered a judgment in the Fayette Circuit Court against one Thomas Monger, as principal, and against William Brumfield, John G. Diehlman and Jeptha Steele, as sureties for said Thomas Monger, for the sum of $1,642.42.

" 2d. That on the 16th day of July, 1877, an execution was issued on said judgment, and placed in the hands of said sheriff of Fayette county for service, etc. ; and on said execution replevin bail was regularly entered and signed by Lewis and George H. Monger, on the 20th day of July, 1877, and on said day said execution was by said sheriff returned with his doings thereon.

" 3d. That on the margin of said judgment mentioned in finding number one above, there was entered the following release, to wit: ' I hereby release Jeptha Steele, and his lands, from all liability on account of this judgment.

" ' August 24th, 1877.                               JOHN SWIFT.

" ' Attest: J. G. F. LEACH, Clerk.'

" And below, and attached to said judgment, the following was entered, to wit: ' I, Joseph B. Jones, acknowledge myself replevin bail for the payment of the above judgment, interest and costs, for the time allowed by law for the stay of execution, together with Lewis Monger and George H. Monger, who have already stayed the same.

" ' August 24th, 1877.                               J. B. JONES.'

" 4th. That said entry of release of said Steele by said Swift, and said entry of replevin bail by said Joseph B. Jones, were concurrent acts, and were made under the following circumstances, to wit: Steele desired to be released from said judgment, and Thomas T. Monger, the principal in the original judgment above mentioned, desired to have him released. Said Monger, Swift, Jones, and L. W. Florea, attorney for Steele, were in the clerk's office of said Fayette Circuit Court, when said Monger requested Swift to release said Steele from said judgment. This he agreed to do provided Brumfield and Diehlman were consenting thereto, and said Jones would become such replevin bail thereon, and

Jones consented to become such replevin bail, if said Brumfield and Diehlman were consenting to such release, and thereupon said Monger was asked if said Brumfield and Diehlman were so consenting to said release, and he answered that they were, and immediately thereafter said release was signed by said Swift, and said replevin bail was signed by said Jones.

" 5th. That said William Brumfield and Jos. G. Diehlman had not consented, and did not consent, to said release of said Steele before and at the time of the entry of the same, or before or at the time of the entry of said replevin bail by said Jones.

" 6th. That afterwards, to wit, on the 10th day of August, 1878, said Swift procured the issuance of an execution on said judgment, which execution was placed in the hands of the then sheriff of said county, and thereupon, on the 17th day of October, 1878, said Brumfield and Diehlman filed their complaint in said Fayette Circuit Court against said sheriff, John Swift, Lewis Monger, George H. Monger and Joseph B. Jones, praying to be released from further liability on said judgment, and that the defendants thereto be enjoined from proceeding on said judgment and execution against the property of said Brumfield and Diehlman, and charging in said complaint the release of said Steele without their knowledge and consent, etc., and that said Joseph B. Jones, on the 24th day of August, 1877, with full knowledge of said release, entered and signed the replevin bail heretofore set out; that all the defendants to said complaint were duly summoned, and all suffered default except said Jones, who did not answer the same, but filed the original cross complaint herein; that on said default, and upon trial had, judgment was, on the 10th day of the October term, 1878, of said Fayette Circuit Court, duly rendered in favor of said plaintiffs Brumfield and Diehlman, releasing them from liability on account of said original judgment, and enjoining said defendants from further pro-

ceeding to collect the same from the property of the plaintiffs Brumfield and Diehlman.

"From these facts I concluded that Joseph B. Jones, the plaintiff in this cross action, is not released on the replevin bail on said judgment, and, therefore, find for the Swifts, the defendants in this cross action.

"Samuel A. Bonner,
"Judge F. C. C."

To which findings of fact and conclusion of law the appellant objected and excepted, and also objected to the same, because they were not made and rendered within sixty days from the time said cause was taken under advisement by the court, which objection was overruled by the court, and to which ruling the appellant excepted, and thereupon filed his motion for a new trial, which was overruled, and judgment was then rendered in favor of the appellees, from which the appellant appeals.

The errors assigned are:

1. That the special findings are contrary to the evidence.

2. That the judgment and conclusion of law upon the facts found are contrary to law.

3. That the court erred in its conclusion of law upon the facts found.

4. That the court erred in overruling the motion for a new trial.

5. That the court erred in making, filing and recording its special finding of facts and conclusion of law thereon, over the objection of the appellant, after sixty days from the time the cause was taken under advisement by the court.

6. That the court erred in rendering judgment for the appellees over the objection of the appellant.

It is quite evident from the facts found by the court, that the appellant was induced to become such replevin bail by reason of the representation of Monger, the principal judgment defendant, and at whose instance the appellant became replevin bail, that Brumfield and Diehlman were consenting

to the release of Steele, one of the judgment defendants. The representation so made was false and fraudulent. But it was not found by the court, nor is it claimed by the appellant that there was any evidence showing, or tending to show, that Swift, the judgment plaintiff, was a party to, or participated in any manner in, the commission of the fraud.

Where one is induced to become replevin bail by the false or fraudulent representations of the judgment defendant, he is held bound as such replevin bail, unless the judgment plaintiff was a party to, or had knowledge of, the fraud. *Lepper* v. *Nuttman*, 35 Ind. 384; *Vincennes Nat'l Bank* v. *Cockrum*, 64 Ind. 229. In *Lepper* v. *Nuttman, supra,* which was an action to revive a judgment that had been rendered against one Schmidt, Lepper, who was replevin bail thereon, sought, by his answer, to be relieved from liability, by averring therein that he had been induced to become such replevin bail through the false representations of Schmidt. It was held by this court that the answer was insufficient, because it did not in any way connect the judgment plaintiff with the alleged false representations. The court said : " Schmidt was the judgment defendant, and it was through his representations, as the answer alleges, that the appellant became replevin bail. Unless the representations were made by Nuttman, the judgment plaintiff, or by some one for him and with his consent or procurement, he can not be affected by them."

If the principal, by fraud, induces the surety to become bound, but the obligee has no notice thereof, such fraud, as a general rule, will be no defence to the surety. Brandt Suretyship and Guaranty, section 353. The fraud which will vitiate a contract of suretyship must be one to which the person benefited by the contract is a party, or, at least, of which he had notice. Baylies Sureties and Guarantors, 214 and 424. It must be shown that the judgment plaintiff had an agency in the fraud. *Jenners* v. *Howard*, 6 Blackf. 240; *Craig* v. *Hobbs*, 44 Ind. 363.

In the case under consideration, the appellant, by the exer-

Jones *v.* Swift *et al.*, Executors.

cise of ordinary prudence, might have guarded and protected himself against the fraud that was practiced upon him, by requiring Monger to procure and produce the consent, in writing, of Brumfield and Diehlman to the release of Steele, before becoming such replevin bail, or by requiring them to enter such consent on the record of the judgment, or by making personal inquiry of them as to their having consented to the release.   It was negligence on the part of the appellant to rely solely upon the representation of Monger, when the means of ascertaining, with certainty, the truth of Monger's assertion, and preventing the commission of the fraud that was perpetrated, was within his power.   There can be no fraud practiced on a surety who has the means of acquiring full knowledge of the facts.   Burge Suretyship, 229.   It is the duty of the surety to look out for himself, and ascertain the nature of the obligation embraced in the undertaking. Any other rule would not only work serious inconvenience, but render securities of this character of but little, if any, value. Baylies Sureties and Guarantors, 214.   Fraud must not be induced by the person complaining of it, nor must he suffer himself to become an indolent victim.   He must exercise reasonable diligence to inform himself as to his action in becoming surety.   *Stedman* v. *Boone*, 49 Ind. 469.   In this case it was proper to apply the familiar principle of law, that where one of two innocent persons must suffer loss, it must be borne by the one guilty of negligence.   *Anderson* v. *Warne*, 71 Ill. 20.

The law will not permit the appellant to escape the liability which he incurred, by showing that he became such replevin bail upon a condition not named in the writing which he executed, and which constituted a written contract, by which his liability was created, and is to be measured.   In legal effect, it was an absolute and unconditional promise to pay the judgment.   *Vincennes Nat'l Bank* v. *Cockrum*, 64 Ind. 229.   Its terms can not be varied by a contemporaneous parol agrement, *Smith* v. *Tyler*, 51 Ind. 512, as this would

be engrafting upon the obligation a condition which would contradict its terms and subvert its legal effect. *Parks* v. *Zeek*, 53 Ind. 221. There is no principle of law more firmly settled by the decisions of this court than the one that, "Where a contract is reduced to writing, the legal presumption is, that the entire contract, as finally settled, is embraced therein, and all oral negotiations or stipulations between the parties, which preceded or accompanied the execution of the instrument, are to be regarded as merged in it, and the latter is to be treated as the exclusive medium of ascertaining the agreement to which the contractors bound themselves." *Durland* v. *Pitcairn*, 51 Ind. 426, and the cases there cited.

The conclusion of law declared by the court upon the facts found was not erroneous.

The reasons assigned in support of the motion for a new trial were:

1. That the finding of the court was contrary to the evidence.

2. That the finding of the court was contrary to law.

3. "That the issues of law and fact in said action were submitted to the court for trial, and the court having taken the same under advisement, the judge thereof failed and neglected to make, render or file his finding therein within sixty days thereafter, but held the same for more than sixty days thereafter, he, the said judge, not being prevented from so doing within sixty days by the severe illness of himself and family."

4. That the finding of the court was contrary to law and the evidence.

We have carefully examined the evidence, and find that it is conflicting as to all the material facts in the case. Under the long established practice of this court we are precluded from weighing the evidence so as to determine its preponderance, and, therefore, can not disturb the finding of the court on the weight of the evidence.

The only question remaining for consideration is the one presented by the third cause assigned for a new trial, above

set forth.   The record shows that the trial of the action was completed on the 25th day of January, 1883, and was then taken under advisement by the court, but no decision was rendered therein until the 9th day of April, 1883, being a period of more than sixty days.   The statute provides: "Whenever any issue of law or fact is submitted to the court for trial, and the judge shall take the same under advisement, the judge shall not, except in case of severe illness of himself or family, hold the same under advisement for more than sixty days; and, if the court wherein said issue arose be not then in session, he shall file his determination therein, in writing, with the papers in the case."   R. S. 1881, section 551.   This statute is of a remedial nature, and was, evidently, enacted in the interest and for the benefit of litigants, in expediting the final disposition of their actions in courts of justice, by requiring the judges thereof trying the same, to render within a reasonable time, so prescribed, their decisions therein.   It is to be construed as a rule for the government of the court, and as a compulsory means of compelling judges to render prompt decisions in actions tried by them, so as to mitigate, to that extent, the annoyance and expense incident to protracted litigation.   It will not do to hold that this statute may be used as a weapon against the successful litigant, for whose protection it was enacted, by rendering ineffectual the judgment rendered in his favor, because the judge violated or failed to observe its provisions.   To avoid such injustice the statute must be construed as directory.   It is said in Sedgwick on Statutory and Constitutional Law, 316, that "When statutes direct certain proceedings to be done in a certain way or at a certain time, and a strict compliance with these provisions of time and form does not appear essential to the judicial mind, the proceedings are held valid, though the command of the statute is disregarded or disobeyed.   In these cases, by a somewhat singular use of language, the statute is said to be directory."

In *Nave* v. *King*, 27 Ind. 356, it was said by this

court: "In *People* v. *Allen*, 6 Wend. 486, the court, as we think, correctly laid down the general rule to be, that where the statute specifies the time within which a public officer is to perform an official act regarding the rights and duties of others, it will be considered as directory, unless the nature of the act to be performed, or the language used by the Legislature, shows that the designation of time was intended as a limitation of the power of the officer." See, to the same effect, *Ryan* v. *Vanlandingham*, 7 Ind. 416; *Ketcham* v. *New Albany, etc., R. R. Co.*, 7 Ind. 391.

It is a legal maxim that "An act of the court shall prejudice no man." In Broom's Legal Maxims, 122, it is said: "The above maxim 'is founded upon justice and good sense; and affords a safe and certain guide for the administration of the law.' In virtue of it where a case stands over for argument from term to term on account of the multiplicity of business in the court, or for judgment from the intricacy of the question, the party ought not to be prejudiced by that delay, but should be allowed to enter up his judgment retrospectively to meet the justice of the case." And Wharton, in his work on Legal Maxims, p. 21, in referring to this maxim, says: "Where the time has gone by for entering up judgment through the delay of the court, judgment will be ordered to be entered up *nunc pro tunc*, that is, the proceeding in question may be taken now, instead of at the time when it would have been taken but for default of the court, for the convenience of the court, through press of business, taking time to deliberate on its judgment, death of the party, or other like cause."

No error was committed in overruling the motion for a new trial, and the judgment ought to be affirmed.

PER CURIAM.—The judgment of the court below is affirmed, at the costs of the appellant.

Filed April 17, 1884.