AJAX RUBBER COMPANY, INC., a corporation created by and existing under the laws of the State of Delaware, *vs.* A. B. ROTH-ACKER, INC., a corporation created by and existing under the laws of the State of Delaware, and Emma S. Gam.

1. TRIAL—COURT HAS DISCRETION TO ADMIT IN REBUTTAL EVIDENCE MORE PROPERLY INTRODUCED IN CHIEF.

A court may in its discretion admit in rebuttal evidence which should more properly be introduced in chief, and this is not reversible error, except in case of clear abuse, and unless the adversary be cut off of his right to reply to the new matter.

31 Del.]        AJAX RUBBER CO. vs. ROTHACKER              377 ·

Statement.

2.  BILLS AND NOTES—INSTRUCTION HELD TO STATE WITH SUFFICIENT CLEAR-
    NESS NECESSITY FOR PARTICIPATION IN FRAUD BY AGENTS OF PLAINTIFF.

    In an action on notes, where defense was want of consideration, and fraud
and deceit practiced by plaintiff at time notes were signed, *held*, that a claim
that court in its charge did not sufficiently emphasize the point that the par-
ticipation of the agents of the plaintiff in the fraud was necessary to constitute
a defense was without merit.

Error from Superior Court, New Castle County.

Action by the Ajax Rubber Company, Incorporated, against
A. B. Rothacker, Incorporated, and another. Judgment for de-
fendants in the Superior Court, and the plaintiff brings error.
Affirmed.

See, also, 7 *Boyce*, 479, 108 *Atl.* 276.

IN SUPERIOR COURT.

BOYCE and RICE, J. J., sitting.

*Andrew C. Gray* and *Herbert H. Ward, Jr.,* (of Ward, Gray &
Neary), for plaintiff.

*Harry Emmons* and *William. S. Hilles*, for defendant.

SUMMONS CASE, No. 99, November term, 1917, decided in
Superior Court for New Castle county, November 26, 1919.

This was an action in assumpsit on three promissory notes,
alleged to have been made by the defendants and by them de-
livered to the plaintiff, to secure an open account of the Rothacker
Rubber Company then due to the plaintiff. The notes having been
proved, the defendant Gam set up as a defense that the notes were
without consideration, on account of fraud and deceit practiced
by the plaintiff. It was shown that, in March preceding, Mrs. Gam,
one of the defendants, had signed a guaranty to the plaintiff com-
pany of the payment of purchases theretofore made and that might
thereafter be made by the Rothacker Rubber Company, up to
$25,000.

The A. B. Rothacker Rubber Company was engaged in a
small way in the business of dealing in automobile tires and ac-

cessories. While Mrs. Gam owned a few shares of stock in this company, she had no other relation or connection therewith, and was not an officer or director of the company. A. B. Rothacker was the president and person having general knowledge of the management of the company.

In the spring of 1917, Rothacker was approached by an agent for the Ajax Rubber Company and entered into an agency contract. His dealings in this connection were with Patrick Dowling, who was at that time their traveling representative for Delaware.

At or about the time of the making of the agency contract, the question of the credit of the Rothacker Company was discussed, and Dowling asked Rothacker whether it would be possible for him to get some one to guarantee the payment of any account which might exist for goods sold the Rothacker Company. To this Rothacker replied that he thought he could do so. And his story of the matter was that he first ascertained whether he and Dowling could see Mrs. Gam at her home, and being informed that they could, he and Dowling went to Mrs. Gam's house and in the presence of Mrs. Mammele, a sister of Mrs. Gam, presented to her a form of guaranty; that the paper was presented to Mrs. Gam by Dowling, was not read to her, or by Mrs. Mammele; that Dowling stated to Mrs. Gam, "It was a business form and that it was not a money matter, just a business form." Mrs. Gam, while unable to recognize Dowling as the man who was at her house, stated that a gentleman from the Ajax Rubber Company came to her house, asked her to sign a paper, did not tell her what it was, but did tell her, "It wouldn't be nothing just to sign it"; did not read it to her; told her "there was no money at all; I was just to sign the paper"; did not know what she was signing; did not explain it to her; that she thereupon signed the paper, and the man put it in his pocket and took it away; that Mr. Rothacker took no part in this conversation.

Mrs. Mammele's story of the transaction was that a man came to Mrs. Gam's house with Mr. Rothacker; that he asked Mrs. Gam to sign the paper, told her "that it would cost her nothing, and it was only to secure Mr. Rothacker, and it would cost her noth-

ing"; did not read it or explain the paper to her; and that neither she nor Mrs. Gam understood what it meant.

At the time Mrs. Gam was unable to read or write anything but her name, and Dowling knew that Mrs. Gam could not read or write.

Dowling denied that he went to Mrs. Gam's house at the time the guaranty was signed; but he explicitly stated that there was no person, other than himself, connected with the Ajax Rubber Company, who could have acted in the capacity claimed.

Rothacker testified that at the time the guaranty was presented to Mrs. Gam, the figures, $25,000, were not written, but were subsequently written in while in New York, and after it had been ascertained what the bill of goods which he proposed to purchase would amount to

It appeared that, from the time of the signing of the guaranty by Mrs. Gam until the transaction resulting in the signing of the notes sued upon, Mrs. Gam had no knowlege of any transaction between the Ajax Rubber Company and the Rothacker Company, although Mrs. Mammele did receive a letter that she never showed to her sister, Mrs. Gam.

The Rothacker Rubber Company was unable to meet its payments to the plaintiff, and after considerable correspondence Clifford B. Farr, the "Credit Department" of plaintiff, went to Wilmington, examined the affairs of the Rothacker Company, and found it unable to meet plaintiff's demand with its own assets. He suggested that the Rothacker Company give three notes, be ing the notes sued on, each containing a provision that, if any one was not paid at maturity, they should all immediately become due. These notes were signed by the Rothacker Company, and at Farr's request Rothacker gave him a letter of introduction to his mother in-law, Mrs. Mammele, sister of Mrs. Gam, who was then at Mrs. Gam's summer home in Wildwood, N. J. Farr looked over the shoulder of Rothacker while he was writing the letter, which contained the words:

"* * * Has some papers to be signed by Aunt Emmie. This is a special favor to me and costs her nothing."

With the three notes and the letter of introduction Farr went to Wildwood. Farr's testimony was that he stated to Mrs. Gam, in Mrs. Mammele's presence, that the papers he wanted Mrs. Gam to sign were promissory notes; that Mrs. Gam did not read them, and he did not know whether Mrs. Mammele read them; that he did know that Mrs. Gam could not read or write; that he did not state to Mrs. Gam the amount of the notes; and that Mrs. Gam signed them and he took them away with him.

Mrs. Gam's story of this transaction was that Farr simply told her to sign the papers, that she had no knowledge as to what she was signing, that Mrs. Mammele did not read them, and that she had no knowledge of what she was signing.

Mrs. Mammele stated that Farr presented his letter of introduction, and that Farr said, in asking Mrs. Gam to sign the papers:

"It is not a money transaction; it is only a matter of form."

Farr did not explain that the papers were notes.

Mrs. Gam and Mrs. Mammele denied in their testimony in rebuttal the statements made by Farr as to his representations at the time of the Wildwood interview and signing of the notes. The contention of the plaintiff was: That Rothacker gave to Farr, the agent of the plaintiff, the notes and a letter to Mrs. Mammele, who was the sister of, and transacted business for, Mrs. Gam, who was illiterate. That the letter requested Mrs. Mammele to secure Mrs. Gam's signature on the notes. The agent took the notes and Rothacker's letter and went to Wildwood. He presented the letter and secured Mrs. Gam's signature to the three notes. That as to the signing of the guaranty, it was done at Mrs. Gam's house in the morning, and Dowling was not present, as testified to by Rothacker. That Mrs. Gam and Mrs. Mammelle both testified that another man was with Rothacker when the guaranty was signed at their house, and that they were depending upon Mr. Rothacker in the matter. That they knew the paper Mrs. Gam signed was for the benefit of Mr. Rothacker, or the Rothacker Rubber Company. That neither Mrs. Gam not Mrs. Mammele could identify Dowling as the man who was with Rothacker at

the home when the guaranty was signed. That Dowling had testified that he offered to go with Rothacker, but that Mr. Rothacker said he could manage the matter better without him. It was denied that any fraud or deception was practiced upon Mrs. Gam.

BOYCE, J. (charging the jury).

This is an action of assumpsit on three promissory notes, alleged to have been made by the defendants and delivered to the plaintiff. These notes are in evidence before you and each is dated August 14, 1917. The first is for the sum of $8,290.08, payable September 1st, and the remaining two are each for the sum of $4,145.04, payable respectively October 1st and November 1st following, with interest from August 14, 1917. There is a provision in each of the notes to the effect that, in default of the payment of the first note at maturity, the remaining two should become payable at the option of the payee.

The claim of the plaintiff, in the aggregate, is the sum of $16,580.16, subject to a credit of $817.38, as of August 23, 1917, for goods returned, and a further credit of $3.08 for an overcharge, leaving as a balance due, it is claimed, the sum of $15,756.62, with interest from August 14, 1917.

A negotiable instrument, such as is each of the notes sued upon, imports a consideration, and the plaintiff is not bound to prove consideration, unless misrepresentation or fraud in the execution and delivery of the instrument is relied on. *Kennedy v. Murdick*, 5 *Harr.* 263.

The plaintiff, may, in the first instance rely upon the presumption of a consideration. This presumption is, however, rebuttable, and it is open to the defendant to show that the notes sued on were without consideration. In such event, the burden is on the defendant to prove want of consideration.

As between the original parties to a promissory note, fraud or want of consideration may always be shown. Fraud is never presumed, but must be proved by the party alleging it; and it is a question of fact for the determination of the jury under the

evidence. *Clayton v. Cavender*, 1 *Marv.* 191, 40 *Atl.* 956; *Rogers v. Rogers*, 6 *Pennewill*, 267, 66 *Atl.* 374.

It has been said that fraud generally includes—

"all willful or intentional acts, omissions or concealments which involve a breach of either legal or equitable duty, trust or confidence, and are injurious to another, by which an undue or unconscientious advantage over another is obtained." *Pom. Eq. Jur.* § 873.

Again, fraud has been spoken of—

"as a false representation of fact, made with a knowledge of its falsehood, or in a reckless disregard whether it be true or false, with the intention that it should be acted upon by the complaining party, and actually inducing him to act upon it." *Anson, Contr.* 153, 154.

On an issue to ascertain whether or not a bond and warrant of attorney was an act of the defendant, this court said:

"Fraud means deception, artifice, misrepresentation, concealment." *Green v. Maloney*, 7 *Houst.* 22, 30 *Atl.* 672.

The contention of the defendant is that Emma S. Gam, one of the defendants, is illiterate, unable to read and write, and this fact was known to the plaintiff, or its agents. This court has held that no paper is valid, to charge an illiterate person who can neither read nor write, unless it appear, if the validity of the paper be questioned, that it was honestly and fairly read or explained to him, and was of such a nature that he could understand what it meant. It is, of course, not necessary, in case of such reading or explaining, to show that the illiterate person did understand its contents and nature. *Green v. Maloney, supra.*

These general statements will aid you in following the remainder of this charge, and in reaching your verdict upon the issues raised in this case.

It is not denied that Emma S. Gam is an illiterate woman, unable to read or write, except her name. She admits signing an agreement of guaranty in evidence before you, which is in the following language:

"In consideration of the sum of one dollar and other valuable considerations, the receipt whereof is hereby acknowledged, the undersigned hereby guarantees the prompt payment of all purchases heretofore made, and that may hereafter be made by A. B. Rothacker Rubber Company, Inc., from the

Opinion.

Ajax Rubber Company, Inc., up to the amount of $25,000; it being understood that this guaranty shall be a continuing guaranty, and shall remain valid and cover all purchases, until receipt by the Ajax Rubber Company, Inc., of a written notice from the undersigned that this guaranty is terminated

"The undersigned hereby further consents to, and waives notice of, any extension or extensions of payment that may be hereafter granted by the Ajax Rubber Company, Inc., to the said principal debtor by the acceptance of notes or otherwise, of the payment of the indebtedness which is secured by this guaranty.

"Dated March 23, 1917.

"EMMA S. GAM. [L. S.]

"Witness: HANNAH MAMMELE."

In a guaranty of this character it is the duty of the person receiving it to notify the guarantor, within a reasonable time, of its acceptance; also the guarantor is entitled to reasonable notice of demand upon the principal debtor for payment of unpaid accounts accrued under the guaranty, and of the nonpayment or default. Such a guaranty when accepted, is an undertaking by one person—called a guarantor—to another for the payment of the debts of another in case of default.

It is the contention of the defendant that at the time she signed the guaranty it did not contain the figures $25,000, and that they were subsequently inserted without her authority or consent, express or implied, that the guaranty was neither read nor explained to her, and that she was induced by misrepresentation or fraud of an agent of the plaintiff to sign it, in the belief that she was signing an instrument of a different character. If the guaranty was signed in blank, and the figures $25,000 were subsequently inserted by the plaintiff, or its agent, without the consent, either express or implied, of the defendant, or if the guaranty was not fairly read or explained to the defendant, in view of her illiteracy, or read or understood by another acting for her as her agent, upon whom she relied for information in respect to the paper before signing it, or if the defendant was induced by misrepresentation on the part of the plaintiff, or its agent, as to the character of the paper, to sign it, there is no liability upon the guaranty; for under such circumstances, if they existed at the time of the signing of the paper, there would be no meeting of the minds

of the parties and the guaranty would be invalid, and it would not
support a consideration for the notes.

The contention of the plaintiff is that the agreement of guaranty did, at the time it was signed by the defendant, contain the
figures $25,000, and that they were not subsequently inserted by
the plaintiff, or an agent acting for it; that no deception, misrepresentation, or concealment on the part of the plaintiff, or
its agent, as to the character of the guaranty, was resorted to in
procuring the signature of the defendant thereto; and, further, that
no repesentative of the plaintiff was present at the time of signing.

If the evidence supports these facts, then the guaranty, if
notice of its acceptance was in a reasonable time communicated
to the defendant by the plaintiff, is a legal obligation, and will support a consideration for the notes, in the absence or anything otherwise affecting the validity of the notes. The matters thus raised
are purely questions of fact for your consideration and determination, under all the evidence before you.

It is not denied that the defendant signed the notes. The
defense set up against the notes is concealment or fraud, and no
consideration. If the defendant was induced to sign the notes
as by fraudulent concealment or misrepresentation, the effect
would be one of mistake, and of no meeting of the minds of the
parties, and no recovery can be had upon the notes; for it was the
duty of the agent of the plaintiff to honestly and fairly make known
to the defendant the nature of the transaction, and the obligation
she was assuming by signing the notes. If, however, the nature
and character of the notes were honestly and fairly explained to
the defendant (or another in her presence, acting for her as her
agent, upon whom she relied for information in respect to the notes)
before signing them , then if you find from the evidence, considered in connection with our instruction in relation to the guaranty,
that it is a binding obligation upon the defendant, the plaintiff
is entitled to a recovery for the full amount of its claim. If, on
the other hand, you find that the agreement of guaranty is invalid,
then a recovery cannot be had upon the notes for want of consideration to support them.

If we have not covered all the prayers of counsel in this case, it is because we think any prayers omitted are inapplicable.

Where the evidence in the case is conflicting, it is the duty of the jury to reconcile it, if it can; but, where it is irreconcilable, the jury should give credence to that testimony which in its judgment is entitled to the greater weight, taking into consideration all of the circumstances and the opportunities for the witnesses to have knowledge of the transaction to which they testified.

You are the sole and exclusive judges of the witnesses, and of the weight and value of their testimony. You are to apply the facts of this case to the law as the court has announced it to you.

Your verdict should be in favor of the party in whose favor the evidence preponderates. By preponderance of evidence is not necessarily meant the greater number of witnesses to prove a fact, but rather the probability of the truth of the witnesses, in view of all the facts and circumstances in the case.

Verdict for defendant.

A bill of exceptions for the plaintiff was signed, and a writ of error (No. 7, January term, 1921), sued out to the judgment entered on the verdict.

### IN SUPREME COURT

Argued in the Supreme Court before CURTIS, CH., PENNEWILL, C. J., and CONRAD and HEISEL, J. J.

*Andrew C. Gray* and *Eugene E. Berl*, for plaintiff in error.

*Harry Emmons* and *William S. Hilles*, for defendant in error Gam.

For the plaintiff, seven errors were assigned. Only five of them were considered before the court, as follows:

(1) That as appears by the report of the testimony, as set forth in the bill of exceptions, the court allowed improper testimony over the exceptions of the plaintiff, as follows:

(a) Hannah Mammele, a witness being called on behalf of the defendant, being examined, the court erred in permitting said witness to testify over objections as follows:

"Q. Mr. Farr has testified that, on the occasion of the signing of these notes at Wildwood, he stated to you in Mrs. Gam's presence, that they were notes—I will ask you whether that is true or untrue?

"Mr. Gray: I object. This conversation has been gone into by Mr. Hilles in his case, and Mrs. Mammele has already given her recollection as to what was said, and I have put my witness on to give his recollection of it.

"Mr. Hilles: It is true that we can't go over the conversation, but for the first time there is injected into this case by the testimony of Mr. Farr his statement of the fact that he made certain statements during that interview, and it seems to me it is proper for us to ascertain whether such statements were or were not made. We are taking a new matter that has come into the case.

" (Objection overruled and exception noted for plaintiff.)

"A. That is untrue."

(b) Emma S. Gam, a witness on behalf of the defendant, being examined, the court erred in allowing over the objection of the plaintiff, the following question to be answered:

"Q. Mr. Farr has testified that on the occasion of his visit to Wildwood, he stated to Mrs. Mammele in your presence that the papers he had and wanted you to sign were notes—is that true or untrue?

"Mr. Gray: I object."

(Objection overruled and exception noted for plaintiff.)

A. "It is untrue."

(c) A. B. Rothacker, a witness called on behalf of the defendant, over the exception of the plaintiff, was allowed to testify as follows:

"Q. What was done about the guaranty, or said about the guaranty?

"Mr. Gray: Was this after the signing of the guaranty?

"Mr. Hilles: Yes.

"Mr. Gray: I object.

" (Objection overruled and exception noted for plaintiff.) ·

"A. After the order was made up, the question was brought up about credit, and Mr. Dowling said, 'I have a guaranty signed,' and another man said, 'Well, what is the amount of the guaranty,' and they looked at the guaranty, and there were no figures on the guaranty, and then the figures of $25,000 were put in there.     *     *     *     "

(2) That the court erred in instructing the jury as follows:

" The contention of the defendant is that Emma S. Gam, one of the defendants, is illiterate, unable to read and write, and this fact was known t · the plaintiff or its agents. This court has held that no paper is valid to charge an illiterate person who can neither read nor write, unless it appears, if the validity of the paper be questioned, that it was honestly and fairly read or explained to him, and was of such a nature that he could understand what it meant.

It is, of course, not necessary, in case of such reading, and explaining, to show that the illiterate person did understand its contents and language."

(3)   The court erred in charging the jury as follows:

"It is the contention of the defendant:   That at the time she signed this guaranty it did not contain the figures $25,000, and that they were subsequently inserted without her authority or consent, express or implied.   That the guaranty was neither read nor explained to her, and she was induced by misrepresentations or fraud of an agent of the plaintiff to sign it, in the belief that she was signing an instrument of a different character.   If the guaranty was signed in blank, and the figures $25,000 were subsequently inserted by the plaintiff or its agent, without the consent, either express or implied, of the defendant, or if the guaranty was not fairly read or explained to the defendant in view of her illiteracy, or read or understood by another acting for her as her agent, upon whom she relied for information in respect to the paper before signing it, or if the defendant was induced by misrepresentation on the part of the plaintiff or its agent as to the character of the paper, to sign it, there is no liability upon the guaranty, for under such circumstances, if they existed at the time of the signing of the paper, there would be no meeting of the minds of the parties and the guaranty would be invalid, and it would not support a consideration for the notes."

(4)   The court erred in charging the jury as follows:

"If the defendant was induced to sign the notes by fraudulent concealment or misrepresentation, the effect would be one of mistake and of no meeting of the minds of the parties, and no recovery can be had upon the notes, for it is the duty of the agent of the plaintiff to honestly and fairly make known to the defendant the nature of the transaction and the obligations she was assuming by signing the notes."

(5)   The court erred in charging the jury as follows:

"If, however, the nature and character of the notes were honestly and fairly explained to the defendant (or another in her presence, acting for her as her agent, upon whom she relied for information in respect to the notes) before signing them, then if you find from the evidence, construed in connection with our instructions in relation to the guaranty, that it is a binding obligation upon the defendant, the plaintiff is entitled to a recovery for the full amount of its claim.   If, on the other hand, you find that the agreement of guaranty is invalid, then a recovery cannot be had upon the notes, for want of consideration to support them."

## ARGUMENT FOR PLAINTIFF IN ERROR.

The second assignment of error is as to the court allowing the defendant to reopen its testimony as to a conversation which the defendant had brought into its case in chief, which conversation was answered by the  plaintiff in rebuttal.   The mere statement of this assignment of error seems to us to show that the court were

in error. It has so often been ruled by the Delaware courts that, if one party opens up a certain conversation, and the other party replies to it, the party having opened such conversation is not permitted to offer further testimony relating to it in reply.

As to the fifth assignment of error containing a summary of defendant's contention:

The contention of the defendant is one thing; the instruction to the jury is another. This instruction explicitly states two separate and distinct grounds of defense, either of which, if established, would invalidate the guaranty. The jury, in effect, are told that if the guaranty was not fairly read or explained to the defendant, in view of her illiteracy, the guaranty would be invalid, or, if the defendant was induced, by misrepresentation on the part of the plaintiff or its agent, the same result would follow.

This is not verbal casuistry, but a plain interpretation of the language used by the court. It is not suggested here, or elsewhere, that the learned judge who delivered the charge had an erroneous conception of the law applicable to the case, and much less that he intended to be otherwise than strictly impartial in his instructions to the jury. It is rather to be surmised that, in delivering an oral charge, the learned judge unconsciously assumed that the jury understood as clearly as he did the absolute necessity of connecting the plaintiff with any alleged practice of fraud, and that, however gross and palpable the fraud practiced on Mrs. Gam might have been, it was of no avail to invalidate the guaranty, unless participated in by the plaintiff. This issue, as to the plaintiff's participation in fraud, was an issue of fact, and the paramount issue to be tried by the jury. It is natural to suppose that the jury should infer from the language of the charge that Mrs. Gam was entitled to a protection, no matter by whom the fraud established was committed.

The court's summary of the plaintiff's contention is as follows:

"The contention of the plaintiff is * * * that no deception, misrepresentation, or concealment on the part of the plaintiff, or its agent, as to the character of the guaranty, was resorted to in procuring the signature of

the defendant thereto, and, further, that no representative of the plaintiff was present at the time of signing.

"If the evidence supports these facts, then the guaranty, if notice of its acceptance was in a reasonable time communicated to the defendant by the plaintiff, is a legal obligation, and will support a consideration for the notes, in the absence of anything otherwise affecting the validity of the notes."

Taking together the court's instructions upon the contentions of the parties, it is seen that the jury is instructed, after analysis of the defendant's contention, to find for the defendant, if, the defendant being illiterate, the guaranty was not fairly read or explained to her, or read or understood by her agent. There is nothing in its instruction, after consideration of the plaintiff's contention, to disturb the force of the instruction upon the defendant's contention.

This is the more so, because the summary of the plaintiff's and the defendant's contentions, and the court's instruction as to each, was immediately preceded in the charge by the statement assigned as error in the fourth assignment. This instruction is based upon the case of *Green v. Maloney*, 7 *Houst.* 22, 30 *Atl.* 672.

That part of the charge complained of under the seventh assignment directs the attention of the jury on the question of the validity of the notes to the instructions previously given concerning the validity of the guaranty. It is thus appropriate to consider the fourth, fifth and seventh assignments of error together.

The charge to the jury asserts that the guaranty obtained under such conditions is invalid, without reference to what part was played by the plaintiff or by its agent in procuring the guaranty.

This instruction is practically a direction to the jury to find for the defendant, because the only testimony in the record, regarding the reading of the guaranty to the plaintiff or her business agent, is to the effect that it was not read to or by either. The plaintiff's agent, Dowling, denies that he ever saw either the defendant or her agent, Mrs. Mammele, until he saw them in court the day of the trial.

It is not the law that an instrument executed by an illiterate person, without knowledge of its contents, procured by false and

fraudulent misrepresentations, voids the instrument at its inception, unless the fraud was practiced by the obligee under the instrument or by his or its agents. *Green v. Maloney* has no application to the facts of the case at bar, for that case was a charge to the jury in a case where the bond alleged to have been obtained from the illiterate defendant by fraud was obtained by the plaintiff himself, and did not cause an innocent third party to act to its detriment. In the present case, according to the testimony in behalf of the plaintiff, the plaintiff's agent drew the guaranty and handed it to Rothacker to obtain the signature of the guarantor thereto.

So far as this testimony is concerned, the case is identical in facts with that of *Craig v. Hobbs*, 44 *Ind.* 363. There, where a suit was brought against the surety on a promissory note drawn by the payee and handed by him to the maker, for his own signature and that of a surety, and the maker took the note to his brother-in-law, an illiterate, and, telling him that it was a note for half of the amount for which it was actually made, in the presence of persons who could read and write, including the surety's wife, obtained his signature as surety thereon, and handed it to the payee an hour later. See *McWilliams v. Mason*, 31 *N. Y.* 294.

"When the name of one of two or more obligors in a bond, note, or other writing obligatory, has been forged, the supposed co-obligor, though a surety only, and though he signed in the belief that the forged name was genuine, is nevertheless bound, if the payee or obligee accepted the instrument without notice of the forgery." *Helms v. Wayne Agricultural Co.*, 73 *Ind.* 325, 38 *Am. Rep.* 147.

In *Jones v. Swift*, 94 *Ind.* 516, it was said:

"* * * Where one is induced to become replevin bail by the false or fraudulent representations of the judgment defendant, he is held bound as such replevin bail, unless the judgment plaintiff was a party to, or had knowledge of, the fraud. * * *

"If the principal, by fraud, induces the surety to become bound, but the obligee has no notice thereof, such fraud, as a general rule, will be no defense to the surety. Bandt, Suretyship and Guaranty, § 353. The fraud which will vitiate a contract of suretyship must be one to which the person benefited by the contract is a party, or, at least, of which he had notice. Baylies, Sureties and Guarantors, 214 and 424. It must be shown that the judgment plaintiff had an agency in the fraud. *Jenners v. Howard*, 6 *Blackf.* 240; *Carig v. Hobbs*, 44 *Ind.* 363. * * *

"In this case it was proper to apply the familiar principle of law that, where one of two innocent persons must suffer loss, it must be borne by the one guilty of negligence."

In this connection, the court's attention is called to the fact that in the case at bar the Ajax Company, immediately upon receiving the guaranty, mailed a written acceptance of the same, setting forth that it was up to $25,000, to Mrs. Gam, the appellee. Mrs. Mammele (Mrs. Gam's sister and agent) acknowledges the receipt of this acceptance and states that she did not bring it to Mrs. Gam's attention because she did not want to worry her. See *York County Insurance Co. v. Brooks*, 51 *Me.* 506; also, *Veazie v. Willis*, 6 *Gray*, 90, where a defendant who gave a guaranty of a note upon which the maker's signature was forged, was not allowed to set up the defense of fraud against the payee ignorant of the forgery.

The evidence offered by the plaintiff at the trial is such as to bring the present case clearly within the principles laid down in the cases cited. The testimony on plaintiff's behalf is that its agent drew the guaranty, gave it to Rothacker to obtain his aunt's signature as guarantor, and that the plaintiff's agent received it back an hour and a half later, properly executed. The plaintiff thereupon, and in reliance upon this guaranty, extended to Rothacker a credit of many thousands of dollars.

Of course, the truth or falsity of the testimony in behalf of the plaintiff was a question for the jury, and the jury should have been instructed explicitly that, if they found in favor of its truth, the guaranty signed by Mrs. Gam was valid, and was a sufficient consideration for the notes sued on.

That which the court did instruct the jury, however, taken in connection with its general instructions as to the validity of instruments executed by illiterates which are not read over to them left no room to the jury to bring in a verdict for the plaintiff.

Certainly Mrs. Gam was victimized, but so was the plaintiff, upon its contention and evidence in this case. Upon the plaintiff's case, as put in, it had no knowledge whatever of the fraud under which the guaranty was procured from Mrs. Gam by her nephew

and when it relied upon the guaranty so procured and delivered by the nephew to the plaintiff's agent, who had no knowledge of any fraud in its procurement, to the extent of furnishing some $18,000 worth of credit to the defendant's nephew, it, too, was victimized. Since, then, the decision of this case upon the law as well established depends upon which party told the truth, it should appear affirmatively in the charge that it was necessary, in order to excuse the defendant from her liability on an otherwise valid instrument, on the ground of fraud, to show that she had been victimized by the plaintiff, or its agents, and that victimization by her nephew, without the participation of the plaintiff or its agent therein, did not operate to render invalid the guaranty.

It is not contended in this case that the learned Judge has misconceived the law, but his charge was so framed as to leave upon the minds of the jury the impression that the deception of Mrs. Gam in this case, no matter by whom practiced—whether by the plaintiff's agent or by her nephew—had the effect of voiding the guaranty.

In *Green v. Maloney*, which the court cites and from which it quotes, whatever fraud was practiced was practiced by the plaintiff, himself the obligee of the bond. This, of course, makes its language, taken unqualifiedly, inapplicable in our case, where the vital question is: Who practiced the fraud—a question for the jury. But this difference was not explained to the jury, and, upon the instruction as given, the jury must have believed that the categorical language of *Green v. Maloney*, as to the validity of instruments executed by illiterate persons, applied alike where the instrument sought to be enforced against the illiterate was in the hands of one who practiced the fraud, or in the hands of an innocent holder who had acted to his detriment in reliance upon it.

Appellate courts have not hesitated to order another trial of a case, where it appears that the case was given to the jury upon instructions which tended toward ambiguity and which the jury might easily misunderstand in its application of the law to the facts, to the prejudice of either party to the suit.

It is a generally recognized rule that, to submit the case or

an issue to the jury on a charge or instruction not consistent and harmonious throughout, is an error imperatively demanding a reversal, unless it is clearly shown that the jury was not misled, to the prejudice of the party complaining. *Abbott, Civil Jury Trials*, 666; *Brown v. McAllister*, 39 *Cal.* 573; *Summerlot v. Hamilton*, 121 *Ind.* 87, 22 *N. E.* 973.

It was said in *Strauss v. Insurance Co.*, 9 *Colo. App.* 386, 48 *Pac.* 822:

"It has been held by the Supreme Court that, where there are two instructions in the case, one of which is an accurate statement of the law, and the other inaccurate, the result is, of necessity, an error. *Grant v. Varney*, 21 Colo. 329."

See, also *Black v. Brooklyn Railway Co.*, 108 *N. Y.* 640, 15 *N. E.* 389.

In the case before the court  it was necessary to the ends of justice that the paramount issue, as to the participation of the plaintiff in the gross fraud that was practiced upon the defendant, according to the evidence which we could not contradict, should have been clearly explained to the jury.

There is abundant authority for the large control that a reviewing court will take in the matter of a tendency in the charge of a trial judge to create a misunderstanding of the issues in the minds of the jury.

## ARGUMENT FOR DEFENDANT IN ERROR.

The second assignment of error is based entirely upon the fact that the court permitted Mrs. Mammele and Mrs. Gam, after the plaintiff had closed its case in rebuttal, to make a categorical denial of the testimony of the witnesses for the plaintiff in the matter of certain direct statements made by these witnesses. We are utterly unable to either recall or find such authority, and we respectfully urge that no Delaware court has so held.

The plaintiff in presenting its case simply introduced the notes in evidence and proved their nonpayment, relying upon the presumption which always accompanies the consideration and validity of commercial paper.   The defendant then showed the

conversations under which she was induced to sign these notes, and while it is true that the witnesses in their examination in chief attempted to give their full recollection of these conversations, and that so far as the Farr conversation was concerned, the witnesses were asked whether Farr did not make certain statements and denied that he had done so, it was not until Farr had been placed upon the stand by the plaintiff that there was any evidence in the case that such statements had been made. It would be indeed a strange condition if after this statement had appeared for the first time in the testimony of the plaintiff, it was incompetent for the defendant to deny categorically this fact. Such is not the law. 3 *Wigmore on Evidence*, § 1873.

However this may be, the matter of allowing relevant evidence at any time in the course of a trial is one resting purely on the discretion of the trial court, and if the evidence be competent and material the time when it is permitted to be introduced is purely discretionary and therefore incapable of being assigned as error. 3 *Wigmore on Evidence*, § 1873; 38 *Cyc.* 1356, 1357, and cases cited.

The fifth and sixth assignments of error may be considered together.

It is difficult for us to understand the contention made by plaintiff in error under these assignments. It is very frankly stated that—

"It is not suggested here, or elsewhere, that the learned judge who delivered the charge had an erroneous conception of the law applicable to the case, and much less that he intended to be otherwise than strictly impartial in his instructions to the jury."

The only point relied upon is that the court did not in each sentence of the charge expressly and directly refer to the fact that the fraud relied upon must be the fraud of the plaintiff or its agent. Had there been in the testimony any evidence of fraud practiced by any one, other than the plaintiff, or its agent, there might possibly have been some occasion for the court in its charge to have continuously emphasized this point. But there was no such evidence. The only fraud of which there was any evidence before

the jury was the fraud of the plaintiff or its agent. Not only is this true, but it is an elementary proposition that the whole charge of the court must be taken together, and from the charge it clearly appears that in order for the defense of fraud to be available to the defendant, the jury must be satisfied that it was the fraud of the plaintiff or its agent. It is certainly not the province of a trial court in its instructions to a jury to deal with the whole law upon any particular subject, stating and defining the limitations and conditions of its applicability, the exceptions to its universal application, etc.

The rule is well laid down in *Blashfield's Instructions to Juries*, § 86; *Hughes' Instructions to Juries*, §§ 43, 56, 70, 71.

We, of course, do not question the proposition, and no such question can be found in the opinion of the court below, that in order for fraud to be available as a defense it must be fraud practiced by the plaintiff or its agent.

The learned counsel do not attempt to contend, as they could not contend, that if the testimony of the defendant was true, the verdict was incorrect. Nor do they contend or attempt to contend, that any proposition of law laid down by the court, when applied to the facts of the case, involves any error, or was in any way unfair to the plaintiff.

It is, of course, immaterial that Rothacker wrote a letter, if Farr, knowing the contents of this letter, the purpose for which it was written and its falsity, used it to induce Mrs. Gam to sign the notes. *Isaacs v. Messick*, 1 *Marv.* 259, 40 *Atl.* 1109; *Maggart v. Freeman*, 27 *Ind.* 531; and the cases cited in 23 *American Digest*, 1662 *et seq.*

It is respectfully submitted that the charge of the court below, when taken in its entirety, is a correct statement of the law, and involves no possible misunderstanding on the part of the jury in their application to the facts presented for their consideration.

CURTIS, Chancellor, delivering opinion of the Court:

The action in the Superior Court was on three promissory notes made by the defendants, and the defense was want of con-

sideration and fraud and deceit practiced by the plaintiff on Mrs. Gam at the time she signed them. Judgment was entered on a verdict for the defendant.

There are six assignments of error. The first was not urged.

[1]   The second assignment was: The court erred in allowing the defendant to give testimony in rebuttal as to a conversation which the defendant had brought out in the case in chief. There is no rule making it a reversible error if such testimony is admitted. A court may in its discretion admit in rebuttal evidence which should more properly have been introduced in chief, and this is not reversible error except in case of clear abuse and unless the adversary be cut off of his rights to reply to the new matter. 38 *Cyc.* 1356-1359; 3 *Wigmore on Evidence*, § 1873. This well-established principle is applicable here, and there was no error below in admitting the rebuttal evidence.

[2]   The fourth, fifth, sixth and seventh assignments of error all relate to the same general subject-matter, and the basis thereof is the claim that the court below in its charge did not sufficiently emphasize the point that the participation of the agents of the plaintiff in the fraud was necessary to constitute a defense. Taking the charge as a whole, it states with clearness that the deception or misrepresentations, if any, practiced on the maker of the notes, must have been practiced by the agent or representative of the plaintiff, and that the other statements in the charge complained of were not misleading or confusing to the jury, or incorrect statements of the law as applicable to the facts of the case.

There was, therefore, no error in the proceedings in the court below, and the judgment below will be affirmed.